Melvin BURKE, Appellee,

v.

PRACTICAL CONCEPTS, INC.,
Appellant,

and

Leon J. ROSENBERG and Lawrence Posner, Defendants,

v.

The REPUBLIC OF BOLIVIA, Third Party Defendant.

No. 82–1772.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1983.

Decided Sept. 20, 1983.

O'Connell & Middlekauff, Washington, D.C., on brief), for appellant.

William F. Renahan, Lanham, Md. (Judith L. Bluefeld, Stanbury & Renahan, Lanham, Md., on brief), for appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

In this diversity action, Practical Concepts Incorporated ("PCI") appeals from an order of the district court awarding the value of Bolivian social benefits to Melvin Burke, a former employee of PCI who was discharged prior to completion of his employment contract in Bolivia. Relying on the language of Burke's contract, provisions of the Bolivian civil code, and letters submitted by two Bolivian lawyers, the district court held that Burke was entitled to Bolivian social benefits consisting of "indemnizacion" (roughly translated as unemployment compensation), "desahucio" (roughly, discharge compensation), a vacation bonus, a Christmas bonus, and a profit bonus. While we agree with the district court's determination that Burke's contract was governed by Bolivian law, we find proper only the awards of indemnizacion and a Christmas bonus. Accordingly, we strike those portions of the district court judgment awarding desahucio, vacation bonus, and profit bonus.

I.

On August 3, 1979, the Government of Bolivia ("GOB") and PCI, an American corporation, entered into a contract, No. AID 511–0471, whereby PCI agreed to supply consulting services on rural economic development to the GOB. PCI was to be paid with funds supplied to the GOB under a grant from the United States Agency for International Development ("AID"). The contract was for a period of one year, subject to renewal at the option of AID and the GOB for two additional one-year periods. Pursuant to this contract, on January 24, 1980, PCI and Melvin Burke, an American citizen, signed an agreement whereby

Thomas A. Guidoboni, Washington, D.C. (Michael G. Scheininger, Bonner, Thompson,

Burke undertook to become a consultant "for services actually performed under Contract No. AID 511–0471." Burke's contract was to be for a three-year period or until the PCI/GOB contract was terminated. Also, on ninety days written notice, Burke's contract could be terminated for cause. In addition to his salary, Burke was to receive a monthly housing allowance, a post differential, an educational allowance, and moving expenses.[1] The contract did not mention social benefits existing under Bolivian law, *i.e.,* discharge compensation ("desahucio"), unemployment compensation ("indemnizacion"), and Christmas, profit and vacation bonuses.

In May 1981, the GOB terminated the contract with PCI. By telegram dated June 17, 1981, PCI dismissed Burke retroactively as of June 10. Shortly thereafter, Burke filed a claim for compensation including approximately $32,600.00 in Bolivian social benefits. PCI submitted the claim to the GOB and AID, but it was not paid. This lawsuit ensued.

By order of June 11, 1982, District Judge James C. Cacheris ruled that Bolivian labor law governed Burke's contract, and that under that law Burke was entitled to receive the full value of Bolivian social benefits, minus $7,200.00 he obtained directly from AID for services rendered after June 10, 1981 in connection with his old PCI contract. Burke has not cross-appealed the $7,200.00 set-off.

## II.

■ PCI first contends that neither its contract with Burke nor its original undertaking with the GOB sustain the inference that Burke is entitled to social benefits under Bolivian labor law.

The Burke/PCI contract states that "both parties . . . are bound by the GOB contract dated August 3, 1979." This clause thus incorporates the terms of the original agreement between PCI and the GOB. Burke asserts key provisions of the

PCI/GOB contract which he claims entitle him to Bolivian social benefits upon premature termination by PCI. Section VI, "Conformity to Laws and Regulations of Bolivia," states that "this contract will be interpreted in accordance with the laws of Bolivia," and that "the Contractor and his representatives shall comply with all laws, norms and regulations of the Country." Since under the laws of Bolivia terminated employees are guaranteed special benefits provided certain conditions are met, Burke stands entitled to those benefits under this contract unless other provisions of the PCI/GOB agreement curtail the scope of section VI.

PCI contends that several provisions in the GOB contract limit the application of Bolivian labor law to Bolivian nationals, thus excluding Burke. Section XX, paragraph H of the PCI/GOB contract reads as follows in translation:

H. *Labor Standards*

The labor standards applied to the Contractor's *Bolivian* personnel performing work under this Contract shall not be less favorable than those prescribed by law, regulations, customs and practices of Bolivia. (emphasis added)

Section XII requires PCI to register all Bolivian employees, but not Americans, with the national social security administration ("Caja Nacional de Seguridad Social"). Section XII further directs that the terms and conditions of employment for PCI's Bolivian employees be in accordance with Bolivian labor law. A similar distinction between Bolivian and non-Bolivian employees is drawn in section XXIV, which states the PCI will have the right to hire and discharge Bolivian employees in compliance with the Bolivian civil code.

Burke responds by asserting that section XX, paragraph E, *Equal Opportunity Employment,* requires that:

The contractor shall not discriminate in its employment practices with respect to

---

1. The district court's judgment in favor of Burke included an award of housing allowance, post differential and salary for the period June

10 through June 17, 1981. These sums are not in issue on this appeal.

United States and/or Bolivian citizens because of race, color, religion, sex or national origin.

Viewing as a whole the provisions of the two contracts, we believe Burke qualified for the protection of Bolivian labor law. None of the contract provisions cited by PCI explicitly exclude Burke from the shelter of Bolivian law in the event of premature dismissal.[2] Nor do the provisions on which PCI relies limit the nondiscriminatory sweep of the equal opportunity employment clause. It is not necessary that PCI and Burke have contemplated the arising of these benefits at the time the contract was made, since these benefits derive by operation of Bolivian law. PCI is deemed to have knowledge of the relevant Bolivian statutes by virtue of the choice of law provision in the PCI/GOB agreement designating Bolivian law as controlling. In short, we find no basis either in the express terms of the operant documents or in equity to deny Burke the protection of Bolivian law.[3]

### III.

Having determined that Burke's claim for the protection of Bolivian law had a contractual basis,[4] we must next ascertain whether he has met the specific requirements of Bolivian law which are to be satisfied before benefits can be awarded. This calls for examination of the Bolivian civil code.[5]

The district court was asked to decide whether under the Bolivian civil code Burke qualified for an award of indemnizacion, desahucio, and Christmas, holiday and profit bonuses. PCI concedes that if Bolivian law governs the contract, as we hold it does, then under the relevant Bolivian statutes Burke is entitled to indemnizacion and a Christmas bonus. Only the awards of desahucio, the profit bonus and holiday bonus are disputed.

■ We first examine the district court's award of desahucio, or discharge compensation. Under Bolivian law, certain employees are entitled to be compensated in the event of sudden job dismissals beyond their control. One's entitlement to desahucio depends on the kind of contract one enjoys. Article 12 of the General Labor Laws of Bolivia ("GLL") states in translation that

> [t]he contract may be entered into for an indefinite period of time, for fixed time, or for the completion of a specified task or service. *In the first case* neither of the parties may rescind the contract without giving advance notice to the other. . . . In the case of contracts for employees, the employee must give advance notice of thirty days and the employer

**2.** We need not therefore address the question whether, assuming Bolivian labor law applies, any benefits due Burke could have been expressly waived contractually in accordance with Bolivian public policy.

**3.** Our conclusion is buttressed by the opinions of two La Paz lawyers, Fernando Rojas and Jose Bacigalupo, who in letters presented to the district court opined that under ordinary circumstances a foreigner in Burke's position would be eligible for all the benefits enjoyed by Bolivian nationals. *See* Fed.R.Civ.P. 44.1.

**4.** PCI maintains that any payment owed Burke was conditional upon prior approval by the GOB and AID, approval which though sought never came. PCI cites paragraphs 8 and 9 of its contract with Burke:

8. . . . In no case will compensation be paid by PCI for time and expenses not billed to GOB and paid in full.

9. Work under this agreement is subject to approval by the GOB, AID, and availability of funds from AID.

Burke responds—correctly, in our view—that the payments he seeks are not compensation for time and expenses, but benefits which under Bolivian law are guaranteed any employee prematurely terminated from his or her work. Thus any condition precedent to compensation for services is inapplicable to Burke's claim.

**5.** Fed.R.Civ.P. 44.1 guides the adjudication of questions of foreign law:

A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

must give advance notice of ninety days after three months of uninterrupted work. The party who neglects to give advance notice must pay an amount equal to the wages or salary for the period concerned. (emphasis added)

Burke acknowledges that his contract was for a fixed term of three years.[6] As the language of GLL Article 12 suggests, however, desahucio is granted only to discharged employees with open-ended contracts. Employees such as Burke with fixed-term agreements evidently must resort to a damages remedy in the event of premature dismissal. In attempting to salvage the award of desahucio, Burke cites GLL Articles 17 and 13. Article 17 refers fixed-term employees to Article 13 in the event of discharge not the fault of the employee. Article 13 states in translation:

> If the employee or worker is dismissed for reasons beyond his control, the employer must pay him, *aside from any desahucio due,* an indemnity compensation for duration of services in a ratio of one month's wages or salary for every year of continuous work, proportionately to the months worked and discounting the first three months which shall be considered as a probationary period.... (emphasis added)

Burke contends that this article, which PCI concedes guarantees Burke indemnizacion (*i.e.,* unemployment compensation), implies that he is to receive such indemnizacion in addition to "any desahucio due." However, Article 13 is an umbrella provision directed at all contractual employees, *i.e.,* all those with fixed-term, task-specific, or open-ended agreements. As indicated in Article 12, only the latter group enjoys the expectation of desahucio in the event of abrupt termination, in addition to payment of indemnizacion under Article 13. We believe the language of these code articles permits no other interpretation than that employees such as Burke with fixed-term contracts are limited to an award of indemnizacion.

The remaining claims for vacation bonus and profit bonus may be disposed of quickly. Bolivian law guarantees fifteen paid vacation days per year for employees with one to four years' experience. Burke's contract allowed him "to take up to three work weeks for vacation each year," and Burke admitted at trial that he had already been paid for this vacation time. He thus received what the law provides and can claim no additional compensation.

In Bolivia, employees share in their companies' profits. However, one's entitlement to a profit bonus is by definition contingent upon proof that profits were generated. Despite having had ample opportunity to discover evidence of PCI's financial performance in 1981, Burke failed to obtain the corporation's books and to present to the district court evidence that PCI made money in 1981.[7] Hence he is not entitled to any profit bonus.

## IV.

In summary, we affirm the district court's award under Bolivian law of an award of indemnizacion and Christmas bonus to Melvin Burke.[8] We strike the awards of desahucio, vacation bonus and profit bonus.

### AFFIRMED, WITH MODIFICATIONS.

---

**6.** At page 25 of his brief Burke states that his "contract with PCI was for a period of three years."

**7.** Burke protests that he was prevented from proving the existence of profits by the invocation at trial of the fifth amendment privilege against self-incrimination by Leon Rosenberg,

president of PCI. This did not, however, stand in the way of discovering the records of the corporate defendant.

**8.** The parties are directed to the district court's order of June 11, 1982 to ascertain the precise amount now due Burke on the judgment.